HAROLD SULLIVAN, Plaintiff, *v.* POWER CONSTRUCTION, INC., Defendant and Counterplaintiff-and Third-Party Plaintiff-Appellant.—(THE ROBERT IRSAY COMPANY, Defendant and Counterdefendant-Appellee; AMERICAN HOSPITAL SUPPLY CORPORATION *et al.,* Defendants; JAMES MANSFIELD & SONS COMPANY, INC., Third-Party Defendant-Appellee.)

First District (5th Division)   No. 81—1199

Opinion filed August 13, 1982.

Jerome H. Torshen, Ltd., of Chicago (Jerome H. Torshen, Abigail K. Spreyer, and Aaron M. Spiezer, of counsel), for appellant.

Hinshaw, Culbertson, Moelmann, Hoban & Fuller, of Chicago (Stanley J. Davidson, Karl M. Tippet, and Frederick S. Mueller, of counsel), for appellees.

JUSTICE LORENZ delivered the opinion of the court:

Power Construction, Inc. (Power), appeals from an order of the circuit court of Cook County dismissing, with prejudice, its third-party amended complaint for indemnification against James Mansfield & Sons Company, Inc. (Mansfield), and its counterclaim against counter-defendant The Robert Irsay Company (Irsay).

On appeal, Power contends that (1) the trial court erred in dismissing, with prejudice, its third-party complaint for failure to state a cause of action for indemnity, and (2) the trial court erred by denying Power leave to file a third amended complaint and counterclaim.

Plaintiff, Harold Sullivan, filed suit against Power, Irsay, and various other defendants not involved in this appeal, to recover damages for personal injuries suffered while performing roofing work as an employee of Mansfield on March 2, 1977.

The complaint charged that plaintiff was injured as a result of Power's negligence when he fell two stories through an uncovered 30-inch square ventilation shaft opening on the construction site of the American Hospital Supply building in Evanston, Illinois.

A review of the pleadings indicates that Power functioned as general contractor for construction of the building while Irsay was the subcontractor in charge of furnishing, installing and completing all the ventilation and air conditioning work. Mansfield was the subcontractor in charge of roofing.

Count I of the complaint was based on common law negligence and alleged, *inter alia*, that defendants carelessly and negligently (1) left the ventilation shaft opening uncovered, (2) failed to erect guardrails and toeboards around the opening, and (3) failed to erect warning and caution signs around the open shaft.

Count II was based on the Structural Work Act (Ill. Rev. Stat. 1977, ch. 48, par. 60) and alleged that defendants were in charge of construction at the building and wilfully breached their duty to construct, erect and furnish the roof in a safe manner. The underlying complaint is not at issue in this appeal.

Power's answer to the complaint admitted that it had a contract for certain construction work being performed on the building, but denied that it was in charge of the work in the area of the ventilator shaft opening.

Power subsequently filed a single third-party complaint against both Irsay and Mansfield in a three count "Counterclaim and Third Party Complaint." Count I sought indemnification from both defendants based upon alleged breaches of the subcontractor contracts between the parties, in addition to violation of certain OSHA require-

ments. Count II sought contractual indemnification from Mansfield based upon the Structural Work Act, and count III sought indemnification based upon an active-passive theory of common law negligence.

Mansfield moved to dismiss count I on the grounds that any contractual agreement providing that Power could be indemnified against its own acts of negligence was void as against public policy, pursuant to section 1 of "An Act in relation to indemnity in certain contracts" (Ill. Rev. Stat. 1971, ch. 29, par. 61).

Irsay moved to dismiss counts II and III based upon its argument that Power failed to plead facts establishing a qualitative distinction between Power's conduct and that of Irsay and Mansfield. The trial court struck all three counts and granted leave to amend.

This amended pleading was subsequently stricken and Power again filed a one-count "Second Amended Counterclaim," which is the pleading in issue here.

The first portion of the second amended counterclaim was premised upon a theory of contractual indemnity, and set forth the violation of certain contractual obligations contained within the subcontractor's agreement.

It alleged, *inter alia,* that Irsay had contracted with Power to perform all work necessary in connection with the air conditioning and ventilation for the building; and that Irsay agreed to comply with all codes, statutes, and safety requirements regarding that work, including an OSHA regulation requiring a guardrail around a skylight opening where a danger of falling through it exists.

The latter portion of the pleading was based upon an active-passive theory of implied indemnity. Paragraph 7 set forth that any fault of the defendant would arise as a result of vicarious liability under the Structural Work Act. Paragraph 8 alleged certain major and primary acts of negligence without identifying the culpable party.

On April 16, 1981, the trial court granted Irsay's motion to strike and dismiss the counterclaim, with prejudice. The court stated that since there is no vicarious liability under the Structural Work Act, paragraph 7 was insufficient to allege acts of passive negligence. The trial court also denied Power's oral motion for leave to file a third amended counterclaim because of the "age of the case" and because Power had already had "three shots at [amending] it."

Power thereupon filed a motion to vacate the April 16 order and requested leave to file a third amended counterclaim and third amended third-party complaint, which were presented to the court.

The trial court denied Power's motion to vacate and refused to consider whether the amended pleadings stated a cause of action. The

court again based its decision on the age of the case and its determination that Power would not lose any of its substantive rights by dismissal of the second amended counterclaim with prejudice.

Shortly after the entry of this order, however, the trial court granted Irsay leave to file a third-party complaint against Mansfield.

OPINION

Initially, Power argues that the trial court erred in dismissing its second amended pleading because the combined pleading in issue stated a cause of action for indemnity. We do not agree.

As a preliminary matter, we note here that the indemnity issues of this case are controlled by the traditional Illinois rule prohibiting contribution among joint tortfeasors since the instant cause of action arose prior to March 1, 1978. *Bednar v. Venture Stores, Inc.* (1982), 106 Ill. App. 3d 454, 436 N.E.2d 46.

As developed by Illinois courts, the judicially created theory of ordering indemnity evolved to circumvent the harsh effect of the no-contribution rule. *Mierzejwski v. Stronczek* (1968), 100 Ill. App. 2d 68, 75, 241 N.E.2d 573; see also Kissel, *Theories of Indemnity as Related to Third Party Practice,* 54 Chi. Bar Rec. 157 (1973).

Third-party indemnity was traditionally allowed to a tortfeasor whose misconduct was passive in comparison to the misconduct of another tortfeasor whose wrongdoing could be characterized both as active and as the primary cause of plaintiff's injuries. (*Peterson v. Tam O'Shanter Racquet Club, Inc.* (1980), 90 Ill. App. 3d 1029, 414 N.E.2d 181.) Shifting the entire burden from one tortfeasor to another is historically based upon the legal principle that one should be held responsible for one's own actions.

A line of Illinois cases holds that this active-passive theory of indemnity is applicable to cases arising under the Structural Work Act (Ill. Rev. Stat. 1973, ch. 48, par. 60 *et seq.*), where, as here, wilfullness rather than negligence is an element of the original claim. *Miller v. DeWitt* (1967), 37 Ill. 2d 273, 226 N.E.2d 630.

Under the Act, liability for injuries is placed upon those persons "having charge of" the work in progress. (Ill. Rev. Stat. 1973, ch. 48, par. 60 *et seq.*) More than one person may be "in charge of" the work and be liable to the injured party; however, there can be degrees of fault among those who are liable and the passively delinquent party, if held accountable, may transfer its statutory liability to the actively delinquent party. *Rome v. Commonwealth Edison Co.* (1980), 81 Ill. App. 3d 776, 401 N.E.2d 1032.

As Judge Bua once succinctly observed: "It often happens that it

is the plaintiff's employer who has direct control and thus the plaintiff is barred by the provisions of the Workmen's Compensation Act (Ill. Rev. Stat. 1973, ch. 48, par. 138.5(a)), from suing his employer directly. However, the employer can be held liable to indemnify and be brought into a third party action." (Bua, *Third Party Practice in Illinois: Express and Implied Indemnity,* 25 DePaul L. Rev. 287, 307 (1976).) The resulting effect, as another author has aptly commented, is that "liability of the blameless is transferred to liability of the immune." Guy, *Trends in Third-Party Practice* (1977), 65 Ill. B.J. 448 (1977).

We turn now to consider Power's argument that its second amended complaint against Mansfield and counterclaim against Irsay set forth a cause of action for indemnity.

As previously discussed, a third-party complaint for indemnity must allege a qualitative distinction between the conduct of the parties, in addition to a pre-tort relationship between the parties, which is not at issue here.

In the case at bar, the third-party complaint and counterclaim set forth a contract between Power, Mansfield and Irsay whereby the latter parties were to perform work for Power. The complaint further alleged:

"7. That if the defendant and counter-plaintiff was guilty of any fault, it was minor and secondary in nature, and is the result of vicarious liability of the Structural Work Act.

8. Of major and primary Acts in that it:

(a) Removed the cover of the roof opening through which the plaintiff fell;

(b) That after removing the roof covering, failed to provide barricades as required by the OSHA regulations."

■ We find that the third-party complaint is not well pleaded in that any allegations of passive negligence consist primarily of legal conclusions rather than factual averments. The complaint relies solely upon "vicarious liability under the Structural Work Act" to indicate the passive nature of Power's own negligence, while the actively delinquent party is unidentifiable from the face of the pleading.

■ ■ A third-party complaint for indemnity is legally insufficient where it merely alleges a legal conclusion that a third-party plaintiff is passively negligent without alleging any facts to support such a conclusion. (*Preston v. City of Chicago* (1975), 34 Ill. App. 3d 322, 340 N.E.2d 251.) While the Civil Practice Act provides that pleadings be "liberally construed with a view to doing substantial justice ***" (Ill. Rev. Stat. 1973, ch. 110, par. 33(3)), it will not avail to sustain a com-

plaint which wholly fails to state a cause of action. *Smith v. Chicago Housing Authority* (1976), 36 Ill. App. 3d 967, 344 N.E.2d 536.

Although we are cognizant that the line between "ultimate" facts and "conclusions of law" is not easily drawn (*Van Dekerkhov v. City of Herrin* (1972), 51 Ill. 2d 374, 282 N.E.2d 723), we cannot sanction a theory of active-passive negligence which is based upon pure conjecture as to the identity of the actively delinquent, or as to the acts of the passively negligent.

Accordingly, we find that the assailed complaint was substantially insufficient in law and was properly dismissed.

We next consider the issues presented by the trial court's denial to Power of leave to amend its complaint. Here, the trial court based its refusal to consider the proposed amendments upon its determination that Power "most importantly" would not lose any of its substantive rights subsequent to dismissal of the action with prejudice. We disagree.

Supreme Court Rule 273 provides that an involuntary dismissal of an action, with limited exceptions inapplicable to the case at bar, operates as an adjudication upon the merits. (73 Ill. 2d R. 273.) Consequently, any future suits instituted by the plaintiff against the defendants would be clearly barred under the principles of *res judicata. Brainerd v. First Lake County National Bank* (1971), 1 Ill. App. 3d 780, 275 N.E.2d 468.

Furthermore, in the present case, the underlying action had not been fully adjudicated. Instead, Power had elected to immediately seek indemnification from defendants who might be liable to it for all or part of the original plaintiff's claim against it pursuant to section 25 of the Civil Practice Act (Ill. Rev. Stat. 1979, ch. 110, par. 25).

Since under the statute it is not mandatory that a party seek indemnity in the original action as the party still has the option to wait until it is found liable, and then file a third-party complaint (*Security Insurance Co. v. Mato* (1973), 13 Ill. App. 3d 11, 298 N.E.2d 725), the trial court order had the effect of nullifying the stated purpose of this statute, which is to avoid a multiplicity of actions and a repetition of proof by permitting a determination of all claims in a single action. *Mato.*

We now turn to consider whether Power's third amended complaint and counterclaim were sufficient to cure the defects we have discussed, *infra.*

With respect to amendment of pleadings, the most important question to be considered is whether the amendment will be in the furtherance of justice. (*Blazina v. Blazina* (1976), 42 Ill. App. 3d 159,

356 N.E.2d 164.) As the court in *Scala/O'Brien Porsche Audi, Inc. v. Volkswagen of America, Inc.* (1980), 87 Ill. App. 3d 757, 762, 410 N.E.2d 205, stated: "A fundamental purpose of the Civil Practice Act is to remove barriers which prevent the resolution of a case on its merits; to that end, the trial court's power to allow amendments should be freely exercised so that litigants may fully present an asserted cause of action [citations]. Amendment of defective pleadings should therefore be permitted unless it is clear that the defect is not curable thereby."

With these principles in mind we have examined the proposed third amended complaint and counterclaim and we are of the opinion that the indemnitee Power could ostensibly maintain an action against the indemnitors Mansfield and Irsay.

The third amended counterclaim and third-party complaint were separate pleadings containing two counts each. Count I of the third amended counterclaim was based upon an active-passive theory of indemnity.

Paragraph 7 of count I alleged that any liability attaching to Power would arise solely under Structural Work Act provision violations having been held "in charge of the work" as a result of being general contractor on the job and not as the result of any active negligence on the part of Power. Paragraph 8 alleged that Irsay was guilty of the following acts of misconduct.

"8. (a) Built sheet metal curbing for ventilation duct work and improperly and negligently failed to properly cover the opening left in the ventilation shaft after the ventilation curb was installed.

(b) Failed to provide guardrails, a plastic bubble or give other warnings to indicate impending danger to any workmen in the vicinity of the ventilation shaft which was improperly and negligently covered after the ventilation curb had been installed."

Paragraph 9 reiterated the active-passive distinction. Count II was based on the indemnity provision of the contract between Power and Irsay.

The allegations of the third amended third-party complaint against Mansfield were similar save that the recitation of active misconduct on the part of Mansfield included:

"(a) Failed to warn its employees of an improperly and negligently covered ventilation shaft opening.

(b) Failed to guard its employees from stepping into an improperly and negligently covered ventilation shaft opening.

(c) Permitted its employee to remove the covering of said ventilation shaft leaving it open and unprotected.

(d) Failed to provide guardrails, plastic bubble or other warnings as to the improperly and negligently covered ventilation shaft when it knew its employees were working in close proximity to said shaft."

In the interest of permitting full presentation of this case, we find that justice would best be served by allowing Power an opportunity to amend its third-party complaint and counterclaim so as to attempt to state a cause of action.

For the foregoing reasons we affirm in part, reverse in part and remand to the trial court for further proceedings.

Affirmed in part; reversed in part and remanded.

SULLIVAN, P. J., and MEJDA, J., concur.